RANDY TANNER, Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
Tel: (406) 329-4268; Fax: (406) 542-1476
E-mail: randy.tanner@usdoj.gov

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
KAMELA A. CASCHETTE, Trial Attorney
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br> v. <br><br> DEBRA HAALAND, et al., <br><br> Federal Defendants, | Lead Case No. <br> CV 20-181-M-DWM <br><br> Member Case No. <br> CV 20-183-M-DWM |

| | |
|---|---|
| STATE OF IDAHO, by and through the Office of Species Conservation and the Idaho Fish and Game Commission, | **FEDERAL DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR; RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT** |

STATE OF IDAHO, by and through the
Office of Species Conservation and the
Idaho Fish and Game Commission,

                        Defendant-Intervenor.

WILDEARTH GUARDIANS, et al.,

                        Plaintiffs,

      v.

DEBRA HAALAND, et al.,

                        Federal Defendants,

STATE OF IDAHO, by and through the
Office of Species Conservation and the
Idaho Fish and Game Commission,

                        Defendant-Intervenor.

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..........................................................................................1

BACKGROUND ...........................................................................................2

   I.  Statutory Background ..........................................................................2

   II. Factual and Procedural Background.................................................4

STANDARD OF REVIEW ...........................................................................5

ARGUMENT ...............................................................................................7

   I.  Voluntary Remand Is Appropriate ...................................................7

   II. The Court Should Not Vacate the 2020 Withdrawal. ....................13

      A. There Is a Serious Possibility that the Service Can Substantiate Its Decision
      on Remand. ...................................................................................13

      B. The Disruptive Consequences of Vacating the Withdrawal Weigh in Favor
      of Remanding Without Vacatur....................................................15

   III.  If the Court Sets a Deadline for Remand, It Should Be 18 Months After
   Entry of Judgment..........................................................................211

CONCLUSION ...........................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                          **PAGE**

*All. for the Wild Rockies v. Allen*,
  No. 04-1813-JO, 2009 WL 2015407 (D. Or. July 1, 2009)........................... 7, 11

*All. For the Wild Rockies v. Marten*,
  No. CV 17-21-M-DLC, 2018 WL 2943251 (D. Mont. June 12, 2018) .............10

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) .................................................. 6, 13, 15

*Ariz. Cattle Growers' Ass'n v. Salazar*,
  606 F.3d 1160 (9th Cir. 2010) ...........................................................14

*ASSE Int'l, Inc. v. Kerry*,
  182 F. Supp. 3d 1059 (C.D. Cal. 2016) ................................................7

*Cal. Cmtys. Against Toxics v. U.S. EPA*,
  688 F.3d 989 (9th Cir. 2012) ................................................... 6, 9, 13

*California v. U.S. EPA*,
  385 F. Supp. 3d 903 (N.D. Cal. 2019) ...............................................22

*Cent. Power & Light Co. v. United States*,
  634 F.2d 137 (5th Cir. 1980) ..............................................................7

*Center for Biological Diversity v. Haaland*,
  998 F.3d 1061 (9th Cir. 2021) ................................................... 9, 10, 14

*Colo. River Cutthroat Trout v. Kempthorne*,
  448 F. Supp. 2d 170 (D.D.C. 2006) ...................................................21

*Cottonwood Env't L. Ctr. v. Bernhardt*,
  No. CV 18-12-BU-SEH, 2020 WL 7263551 (D. Mont. Dec. 10, 2020)..............8

*Ctr. for Biological Diversity v. EPA*,
  861 F.3d 174 (D.C. Cir. 2017) ...........................................................21

*Ctr. for Biological Diversity, Inc. v. Haaland*,
   No. 20 C 1227, 2021 WL 4169567 (N.D. Ill. Sept. 14, 2021) ...........................24

*Defs. of Wildlife v. Jewell*,
   176 F. Supp. 3d 975 (D. Mont. 2016) ....................................................................4

*Ecology Ctr. v. Castaneda*,
   574 F.3d 652 (9th Cir. 2009) ...............................................................................14

*FCC v. Fox Television Stations*,
   556 U.S. 502 (2009) ...............................................................................................5

*Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*,
   423 U.S. 326 (1976) ...................................................................................... 11, 12

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ...................................................................................... 11, 12

*Ford Motor Co. v. NLRB*,
   305 U.S. 364 (1939) ...........................................................................................6, 7

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ........................................................................ 13, 17

*In re: Clean Water Act Rulemaking*,
   Nos. C 20-04636 WHA, C 20-04869 WHA, C 20-06137 WHA, 2021 WL
   4924844 (N.D. Cal. Oct. 21, 2021) .......................................................................8

*John v. Sec'y of the Interior*,
   No. 3:14-cv-00247-LRH-VP, 2015 WL 505526 (D. Nev. Feb. 5, 2015) ............9

*Meza-Vazquez v. Barr*,
   806 F. App'x 593 (9th Cir. 2020) .......................................................................10

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................................5

*Nat. Res. Def. Council, Inc. v. Train*,
   510 F.2d 692 (D.C. Cir. 1974) ..................................................................... 22, 23

*Nat. Res. Def. Council U.S. Dep't. of the Interior*,
    275 F. Supp. 2d 1136 (C.D. Cal. 2002) ............................................................13

*N. Coast Rivers All. v. U.S. Dep't of the Interior*,
    No. 1:16-cv-00307-LJO-MJS, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016)......8

*Neighbors Against Bison Slaughter v. Nat'l Park Serv.*,
    No. CV 19-128-BLG-SPW, 2021 WL 717094 (D. Mont. Feb. 5, 2021) ..........8, 9

*Pollinator Stewardship Council v. EPA*,
    806 F.3d 520 (9th Cir. 2015) ....................................................................... 13, 15

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
    747 F.3d 581 (9th Cir. 2014) ...........................................................................23

*SKF USA, Inc. v. United States*,
    254 F.3d 1022 (Fed. Cir. 2001).................................................................. passim

*United States v. Oakland Cannabis Buyers' Coop.*,
    532 U.S. 483 (2001)........................................................................................21

*W. Oil & Gas Ass'n v. U.S. EPA*,
    633 F.2d 803 (9th Cir. 1980) ...........................................................................13

*WildEarth Guardians v. Haaland*,
    No. CV 20-1035 (CKK), 2021 WL 4502054 (D.D.C. Sept. 30, 2021)........ 24, 25

*Wildlife v. Norton*,
    239 F. Supp. 2d 9 (D.D.C. 2002) .....................................................................21

## STATUTES

16 U.S.C. § 1532(6) .............................................................................................2

16 U.S.C. § 1532(16) ...........................................................................................3

16 U.S.C. § 1532(20) .........................................................................................10

iv

16 U.S.C. § 1533 ...................................................................................... 2, 3

16 U.S.C. § 1533(b)(6)(A) ............................................................................ 24

16 U.S.C. § 1536(a)(2) ................................................................................. 16

16 U.S.C. § 1536(a)(4) ................................................................................. 15

## FEDERAL REGULATIONS

50 C.F.R. § 402.01 ...................................................................................... 16

50 C.F.R. § 402.10 ...................................................................................... 15

50 C.F.R. § 402.10(c) .............................................................................. 15, 16

50 C.F.R. § 402.10(e) .................................................................................. 16

50 C.F.R. § 402.12 ...................................................................................... 15

50 C.F.R. § 402.13 ...................................................................................... 16

50 C.F.R. § 402.14(a) .................................................................................. 16

50 C.F.R. § 402.14(b) .................................................................................. 16

50 C.F.R. § 424.14(h)(2) ................................................................................ 3

Other Authorities

61 Fed. Reg. 4722 (Feb. 7, 1996) ................................................................... 3

# **TABLE OF EXHIBITS**

EXHIBIT 1 – Declaration of Gary Frazer

## INTRODUCTION

Federal Defendants in both of the above-captioned cases, by and through counsel, respectfully move the Court for a voluntary remand of the U.S. Fish and Wildlife Service's ("Service") determination to withdraw a February 2013 proposed rule to list North American wolverines in the contiguous United States as threatened under the Endangered Species Act ("2020 Withdrawal" or "Withdrawal").  This remand would allow the Service to re-evaluate the Withdrawal consistent with Ninth Circuit case law issued since the Withdrawal's publication and new scientific information.  Additionally, equity weighs in favor of leaving the Withdrawal in place while the Service undergoes its consideration on remand.

Federal Defendants' voluntary remand request responds to Plaintiffs' motions for summary judgment by addressing the proper relief the Court should grant in this case.  The requested equitable relief is legally and factually warranted, narrowly tailored, and resolves Plaintiffs' claims; thus, there is no need for the Court to reach the merits of the arguments in this case.  As discussed below, the Court should grant Federal Defendants' motion for remand and deny Plaintiffs' motions for summary judgment.

## BACKGROUND

### I.    Statutory Background

The Endangered Species Act ("ESA") directs the Secretaries of the Interior and Commerce[1] to determine whether species should be listed as "endangered" or "threatened."[2] 16 U.S.C. § 1533.  Any "interested person" may petition "to add a species to, or to remove a species from" the list of endangered or threatened species.  *Id.* § 1533(b)(3)(A).  Upon receipt of such a petition, the Service must "[t]o the maximum extent practicable," make a finding within 90 days ("90-day finding") as to whether the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted."  *Id.*  If the finding is that the petition presents "substantial scientific or commercial information indicating that the petitioned action may be warranted," the Service must commence a status review.  *Id.*

Following completion of the status review, the Service must, within 12 months after receiving a petition to list a species, issue one of the following

---

[1] The North American wolverine falls under the jurisdiction of the Department of the Interior.  The Secretary of the Interior has delegated ESA listing responsibilities to the Service.

[2]  An "endangered species" is "in danger of extinction throughout all or a significant portion of its range," while a "threatened species" is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(6), (20).

findings ("12-month finding"): (a) the petitioned action is not warranted; (b) the petitioned action is warranted; or (c) the petitioned action is warranted but precluded by higher-priority pending proposals (to make this finding, the Service must also find that expeditious progress is being made to list, delist, or reclassify species). *Id.* § 1533(b)(3)(B); 50 C.F.R. § 424.14(h)(2). If the Service determines that listing is "warranted" it must publish "a general notice and the complete text of a proposed regulation to implement" the listing. 16 U.S.C. § 1533(b)(3)(B)(ii), (b)(5)(A)(i). Within one year of publication of the general notice and proposed regulation, the Service must publish either a final regulation, a notice of withdrawal with a finding on which the withdrawal is based, or a notice of a six-month extension of the one-year period. *Id.* § 1533(b)(6)(A)(i), (b)(6)(B).

The ESA defines "species" as including "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16). An interagency policy statement has interpreted the phrase "distinct population segment" for the purposes of listing, delisting, and reclassifying species under the ESA. *See* Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4722, 4725 (Feb. 7, 1996).

3

## II.      Factual and Procedural Background

In 2010, the Service issued a 12-month finding that the North American wolverine in the lower 48 states was a valid distinct population segment and that listing of the distinct population segment was warranted but precluded by higher-priority listing actions.  FWS0021071-103.  The Service issued a proposed rule to list the North American wolverine distinct population segment as threatened in 2013 ("Proposed Rule").  FWS0021220-47.  In 2014, after a period of study, public comment, and peer review, the Service determined the distinct population segment was not threatened or endangered and withdrew the 2013 Proposed Rule.  FWS0021268-92.  The 2014 withdrawal was vacated by the Court in 2016.  *Defs. of Wildlife v. Jewell*, 176 F. Supp. 3d 975, 1011-12 (D. Mont. 2016).

Following the Court's decision, the Service initiated a review of the scientific literature and data on the North American wolverine, which underwent review from various state and federal government agencies and peer review.  *See, e.g.*, FWS0014752-15173.  The Service's review culminated in the completion of the Species Status Assessment for the North American Wolverine in 2018 ("Assessment").  *See* FWS0016818-996.

On October 13, 2020, the 2020 Withdrawal was published.  FWS0017009-39.  Plaintiffs filed the instant lawsuits challenging the 2020 Withdrawal.  On January 21, 2021, Plaintiffs in the *Center for Biological Diversity* case filed an

4

Amended Complaint, and the Court consolidated the cases on February 2, 2021.

ECF Nos. 5, 8.  Federal Defendants filed their Answers on March 15, 2021, *see*

ECF No. 14, and filed an Amended Answer in the *WildEarth Guardians* case on

June 14, 2021.  Am. Answer in Member Case, *WildEarth Guardians v. Haaland*,

No. 9:20-cv-00183-DWM, ECF No. 26.  The Court granted a motion to intervene

by the State of Idaho on March 24, 2021, and Idaho filed its Answers the next day.

*See* ECF Nos. 19, 20.  The Administrative Record was lodged with the Court.  ECF

Nos. 23, 33.

Plaintiffs moved for summary judgment on November 5, 2021.  ECF Nos.

36, 38.  On December 17, 2021, the Court granted a joint motion for a 45-day

extension of the briefing deadlines and modification of the scheduling order to

accommodate settlement discussions and a motion to approve a settlement

agreement or, alternatively, for Federal Defendants to file a motion for voluntary

remand in lieu of a cross-motion for summary judgment.  ECF Nos. 41, 42.  The

Parties were unable to reach an agreement, and accordingly, Federal Defendants

file this motion.

## STANDARD OF REVIEW

Agencies have inherent authority to reconsider past decisions and to revise

or replace them.  *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009); *Motor*

*Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 42 (1983).

An "agency may seek a remand to reconsider its decision because of intervening events outside of the agency's control" or, "even in the absence of intervening events, the agency may request a remand, without confessing error, to reconsider its previous position." *SKF USA, Inc. v. United States,* 254 F.3d 1022, 1028 (Fed. Cir. 2001) ("*SKF USA*"); *see also Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curium) (citing *SKF USA*, 254 F.3d at 1029). Even if no intervening events have occurred that require remand, "[g]enerally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992.

Remanded agency actions need not be vacated.  Instead, "[w]hether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Id.* (adopting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  The assessment of the appropriateness of vacatur is an equitable one. *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939) ("The jurisdiction to review the orders of [the agency] is vested in a court with equity powers, and while the court must act within the bounds of the statute and without intruding upon the administrative province, it may adjust its relief to the exigencies of the case in accordance with the equitable principles governing judicial action.").

## **ARGUMENT**

The Court should remand the 2020 Withdrawal without vacatur.  The circumstances of this case satisfy the well-established grounds for granting a voluntary remand.  Additionally, principles of equity weigh against vacating the Withdrawal.  Finally, if the Court sets a deadline for completing the remand, Federal Defendants respectfully request that they be given until 18 months from entry of Judgment to submit a new final listing determination to the Federal Register for publication.

## I.     **Voluntary Remand Is Appropriate**

The Service has identified legitimate concerns regarding the 2020 Withdrawal and on this basis requests voluntary remand.  This request is neither frivolous nor made in bad faith.  Thus, voluntary remand is appropriate here.

A "voluntary remand" is a request by an agency for "remand without [judicial] consideration of the merits," while "a court-generated remand" is "a remand after consideration of the merits."  *Cent. Power & Light Co. v. United States*, 634 F.2d 137, 145 (5th Cir. 1980).  A court's authority to remand a decision without judicial consideration is vested in its equitable powers.  *All. for the Wild Rockies v. Allen*, No. 04-1813-JO, 2009 WL 2015407, at *2 (D. Or. July 1, 2009) ("It is within this court's equitable power to remand an agency decision without judicial consideration of the merits." (citing *Ford Motor Co.,* 305 U.S. at 373)).  A

7

voluntary remand serves the interests of judicial economy by allowing an agency

to reconsider and rectify a decision without further expenditure of judicial

resources. *ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1063 (C.D. Cal. 2016).

An agency "may seek a remand to reconsider its decision because

of intervening events outside of the agency's control," such as new judicial

decisions. *N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 1:16-cv-00307-

LJO-MJS, 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016) (quoting *SKF USA*,

254 F.3d at 1028). "[E]ven in the absence of intervening events [since the

agency's original action], the agency may request a remand, without confessing

error, to reconsider its previous position." *Cottonwood Env't L. Ctr. v. Bernhardt*,

No. CV 18-12-BU-SEH, 2020 WL 7263551, at *1 (D. Mont. Dec. 10, 2020)

(citing *SKF USA*, 254 F.3d at 1028). Similarly, an agency need not defend a

challenged action and may request voluntary remand without confessing error. *In*

*re Clean Water Act Rulemaking*, Nos. C 20-04636 WHA, C 20-04869 WHA, C 20-

06137 WHA, 2021 WL 4924844, at *4 (N.D. Cal. Oct. 21, 2021), appeals

docketed, *In re: Am. Rivers v. Am. Petroleum Inst.*, No. 21-16958, *Am. Rivers v.*

*Arkansas*, No. 21-16961 (9th Cir. Nov. 22, 2021).

When agencies desire to reconsider challenged actions, it is "common

practice in the Ninth Circuit to grant a federal agency's voluntary request for a

remand unless the request is frivolous or made in bad faith." *Neighbors Against*

*Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 WL 717094,

at *2 (D. Mont. Feb. 5, 2021), *appeal docketed*, No. 21-35144 (9th Cir. Feb. 23,

2021).  Courts grant such voluntary remand requests where the agency identifies

"substantial and legitimate concerns for [the agency] to revisit prior decisions[.]"

*Id.*; *see also Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citing *SKF USA*, 254

F.3d at 1029 (noting that, "if the agency's concern is substantial and legitimate, a

remand is usually appropriate")); *John v. Sec'y of the Interior*, No. 3:14-cv-00247-

LRH-VP, 2015 WL 505526, at *2-3 (D. Nev. Feb. 5, 2015) (granting motion for

voluntary remand where plaintiffs did not show it was frivolous or made in bad

faith).

The grounds upon which Federal Defendants seek voluntary remand in this

case are neither frivolous nor made in bad faith.  The Service seeks to re-examine

portions of the Withdrawal in light of the Ninth Circuit's decision in *Center for

Biological Diversity v. Haaland*, 998 F.3d 1061 (9th Cir. 2021) ("Pacific Walrus

Decision"), which was issued after the Service published the Withdrawal.  Frazer

Decl. ¶ 3.  Additionally, as part of the remand process the Service would like to re-

evaluate the Withdrawal in light of new available scientific information, such as

the studies raised by Plaintiffs in their Motions for Summary Judgment, and the

Service's Distinct Population Segment policy.  *Id.* ¶ 4.

First, the Service wishes to re-examine the 2020 Withdrawal's "foreseeable future" discussion for North American wolverines in the contiguous United States in light of the Ninth Circuit's 2021 Pacific Walrus Decision.  In the Pacific Walrus Decision, the Circuit found that the Service provided only a "cursory explanation" for a change in its position on the scope of the foreseeable future[3] in the context of the Pacific walrus.  *Ctr. for Biological Diversity*, 998 F.3d at 1068-70.  Plaintiffs here have raised this issue in their briefs for the instant litigation, contending that the Service did not provide a reasonable explanation for the foreseeable future timeframe discussed in the Withdrawal.  ECF No. 37 at 44-45.  Because the Ninth Circuit issued a decision after the Withdrawal's publication on the very topic raised by Plaintiffs in the summary judgment briefs, the Service would like to take the opportunity in the first instance to consider what impact this intervening case has on the Withdrawal, if any.  *See Meza-Vazquez v. Barr*, 806 F. App'x 593, 595 (9th Cir. 2020) ("Remand is appropriate where new factors, such as intervening case law, call into question the [agency]'s decision."); *All. For the Wild Rockies v. Marten*, No. CV 17-21-M-DLC, 2018 WL 2943251, at *2 (D. Mont. June 12, 2018) (discussing that, after an uncontrollable intervening event, "remand is

---

[3] Under the ESA, a threatened species is a species "likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(20).

generally required if the intervening event may affect the validity of the agency action" (quoting *SKF USA*, 254 F.3d at 1028)).

The Service also seeks voluntary remand to consider new scientific information, including several studies raised by Plaintiffs in their Motions for Summary Judgment, and to reconsider the Distinct Population Segment discussion in light of these studies and the Service's Distinct Population Segment policy. Frazer Decl. ¶ 4. For example, the studies Sawaya (2019) and Mowat (2019) are relied on heavily by Plaintiffs in the summary judgment briefs, particularly in the portions challenging the Withdrawal's Distinct Population Segment discussion. The Service would like the opportunity to re-examine the Withdrawal so it can thoroughly consider these studies—and any other new, relevant information—in a new final determination to ensure its compliance with the ESA's best available science requirement and the Service's Distinct Population Segment policy. *Id.*; *All. for the Wild Rockies*, 2009 WL 2015407, at \*2-3 (granting motion for voluntary remand where the Service wanted to re-examine whether its determination was based on the best available science).

Finally, if the Court were to reach the merits of Plaintiffs' claims and find that the Withdrawal was arbitrary and capricious or otherwise unlawful, the proper course would be to remand to the agency for reconsideration. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation."); *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp*., 423 U.S. 326, 332-33 (1976) (per curiam) (judicial review of agency action ordinarily requires remand to the agency so that the agency can exercise its discretion).  By granting this motion, the same relief can be provided now, without the added expense of further litigation (here or on appeal) and permit the expert agency the opportunity to bring to bear its expertise on the issues that it and the Plaintiffs have identified.  Additionally, the Service intends to notify the public of, and seek comment on, its re-evaluation of the Withdrawal by publishing a notice in the Federal Register.  Frazer Decl. ¶ 10.  Case law generally recognizes that federal agencies are better positioned than courts to navigate and weigh the many interests that have a stake in important, technical regulatory regimes and that the Court should allow the Service to resolve these issues in the first instance.  *See Fla. Power & Light Co.*, 470 U.S. at 744; *Transcon. Gas Pipe Line Corp*., 423 U.S. at 333.  Allowing the Service to reconsider the Withdrawal after publishing notice of its re-evaluation and requesting comment, which allows for public participation and results in greater transparency, will only aid the Service's implementation of the ESA.  Voluntary remand is appropriate under these circumstances.

## II.     The Court Should Not Vacate the 2020 Withdrawal.

The Court should not vacate the 2020 Withdrawal for two reasons.  First, there is a serious possibility that the Service could address Plaintiff's concerns after conducting its review and substantiate its decision on remand.[4]  Second, the disruptive consequences of vacating the withdrawal weigh in favor of remanding without vacatur.

### A.     There Is a Serious Possibility that the Service Can Substantiate Its Decision on Remand.

The Ninth Circuit and many other courts have recognized that even "[a] flawed rule need not be vacated" and "'when equity demands, the regulation can be left in place while the agency follows the necessary procedures' to correct its action." *Cal. Cmtys, Against Toxics*, 688 F.3d at 992 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)); *see also W. Oil & Gas Ass'n v. U.S. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (recognizing that courts have equitable discretion to leave a Clean Air Act regulation in place during remand).

Although a request by the government for voluntary remand does not require this Court to reach the merits, courts apply the same equitable analysis used to

---

[4] The Service does not suggest that reaffirming the Withdrawal is the only feasible outcome of a voluntary remand without vacatur here, only that it is possible.  If the Court grants Federal Defendants' motion for voluntary remand without vacatur, the Service would retain discretion to make any of the findings specified in 16 U.S.C. § 1533(b)(6)(B)(iii).  Frazer Decl. ¶ 8.

determine whether invalidated administrative actions should be vacated during the remand period. *See Nat. Res. Def. Council v. U.S. Dep't. of the Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002). Most fundamentally, courts have "looked at whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand." *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015) (citing *Allied–Signal*, 988 F.2d at 151 (declining to vacate because there was "at least a serious possibility that the [agency would] be able to substantiate its decision on remand")).

Here, the Service has determined that intervening Ninth Circuit case law and its desire to incorporate new available science warrant a re-evaluation of its 2020 Withdrawal decision. While the Service would approach this re-evaluation with an open mind, it is very possible that the Service could offer better reasoning and reach the same outcome. First, the foreseeable-future issue in this case that the Service would like to re-examine stems from Ninth Circuit's Pacific Walrus Decision. There, the Circuit found that "[t]he Service may be able to issue a decision sufficiently explaining the reasons for its change in position," and accordingly that remand without vacatur was appropriate. *Ctr. for Biological Diversity*, 998 F.3d at 1070. The Court should make the same finding here.

14

Second, with regard to the studies and the Service's Distinct Population Segment finding, under the ESA's best-available-science standard, the weight accorded to scientific analyses is a determination committed to the Service's discretion.  16 U.S.C.  § 1533(b)(1)(A); *see Ecology Ctr. v. Castaneda*, 574 F.3d 652, 659 (9th Cir. 2009) ("[I]t is not [the court's] role to weigh competing scientific analyses."). As long as the Service rationally explains how the studies raised by Plaintiffs affect or do not affect its determination, it could still lawfully find that withdrawal of the Proposed Rule is appropriate.  *See Ariz. Cattle Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010) (finding courts should defer to agency decision when there is "rational connection between the facts found and the determinations made").  In other words, there is a "serious possibility" that the Service may be able to justify the Withdrawal on remand.  *See Pollinator Stewardship Council*, 806 F.3d at 532 (9th Cir. 2015) (quoting *Allied-Signal*, 988 F.2d at 151).

### B.   The Disruptive Consequences of Vacating the Withdrawal Weigh in Favor of Remanding Without Vacatur.

Vacating the Withdrawal will result in disruptive consequences that outweigh any benefits of such a remedy.  Vacatur would reanimate the Proposed Rule and would result in confusion and uncertainty for the public, federal agencies, and other stakeholders.  Additionally, the Service has committed to completing the remand within 18 months of the Court's ruling on this motion, and wolverines in the lower-48 States will not face significant risk over the 18 months of the remand.

15

Vacatur would result in disruptive consequences.  If the Withdrawal were vacated, wolverines would once again be considered "proposed" for listing under the ESA, which would make them eligible for informal conferencing under ESA Section 7.  Frazer Decl. ¶ 7; *see* 16 U.S.C. § 1536(a)(4); 50 C.F.R. § 402.10.  A conference consists "of informal discussions concerning an action that is likely to jeopardize the continued existence of the proposed species."  50 C.F.R. § 402.10(c).  Under some circumstances, the agency implementing an action must include proposed species in a biological assessment and determine if a conference is required, and the consulting agency—here, the Service—must then indicate whether it concurs in the assessment.  *Id.* § 402.12.  If an action also requires formal consultation for a listed species,[5] then the Service provides the conference results for the proposed species in the biological opinion for the listed species.  *Id.* § 402.10(e).  Any recommendations made by the Service as a result of the informal discussions that take place during the conferencing process are advisory only.  *Id.* § 402.10(c).

---

[5] ESA Section 7 requires federal agencies to ensure that their activities do not jeopardize the continued existence of listed endangered or threatened species or adversely modify those species' critical habitats. 16 U.S.C. § 1536(a)(2).  If the agency proposing to take action ("action agency") determines that its actions "may affect" a listed species or its critical habitat, the agency must consult informally or formally with either the Fish and Wildlife Service or the National Marine Fisheries Service, the consulting agencies, depending on the species at issue. 50 C.F.R. §§ 402.01, 402.13, 402.14(a)-(b).

Vacatur by the Court would be disruptive of ongoing and future ESA consultations, as well as any consultations completed since the issuance of the Withdrawal.  Frazer Decl. ¶ 7.  It would cause confusion among the public, other agencies, and stakeholders, and impede the efficiency of ESA implementation, by creating uncertainty about which consultations, actions, or biological assessments may need to be revisited to include the informal conferencing process for the wolverine.  *Id.*  The 2013 proposed listing rule also includes some information that the Service no longer considers the best available scientific information.  *Id.*  This could create more confusion during conferencing because the agency evaluating the action may not be sure what scientific data it should rely on to evaluate the action's potential effects on the wolverine.  Additionally, in some instances, action agencies would need to add an analysis to their biological assessments for projects in wolverine range, although the Service has concluded that routine land management actions are generally not threats to wolverine and are unlikely to meet the standard for conferencing.  *Id.*

In contrast, remand would establish an orderly process in which the Service would have the opportunity to explain the rationale for re-examining the Withdrawal, take public comment, and then, in a final determination, explain to the public and stakeholders what procedures and protections wolverines in the contiguous United States are entitled to under the ESA, if any, based on the best

17

available science.  Uncertainty and possible confusion work against effective

implementation of the ESA and could delay the consultations of other species

already listed as endangered or threatened.

Remand without vacatur also should not unduly prejudice Plaintiffs.  When

deciding whether vacatur is appropriate in ESA cases, courts have considered

whether "concern exists regarding the potential extinction of an animal species."

*Idaho Farm Bureau Fed'n*, 58 F.3d at 1405.  The relatively short amount of time

needed for the Service to complete the remand, protections currently afforded to

the North American wolverine in the contiguous United States, and its current

status all indicate that leaving the Withdrawal in place while the 18-month remand

is ongoing will not put North American wolverines in the lower-48 States at risk.

First, the Service has committed to completing the remand in 18 months.

The Service recognizes the importance of assessing the status of wolverines in the

contiguous United States, and plans to shift staff and resource commitments to

complete a new final listing determination within 18 months of a remand order

from the Court.[6]  Frazer Decl. ¶ 8.

---

[6] The Service's commitment is based on the amount of funding currently available
to its ESA listing program, the assumption that the Service will not be required to
comply with a significant number of other court-imposed deadlines for other ESA
findings and determinations, the Service's authority to hire and retain sufficient
ESA listing program staff, and the assumption that the determination on remand

Additionally, there are already protections in place for wolverines in the

contiguous United States.  The majority of wolverine habitat in the contiguous

United States is on U.S. Forest Service land, and the Forest Service considers

wolverines a Species of Conservation Concern[7] in its Rocky Mountain Region, and

a Sensitive Species[8] in its Intermountain Region and Northern Region.  Frazer

Decl. ¶ 6.  As a result, many National Forests within the wolverine's occupied

range already include provisions in their forest management plans that may benefit

wolverines and their habitat.  *Id.*  Wolverines are also protected under State laws

and regulations throughout their range in the lower-48 States, including the

following: listed as threatened under the California Endangered Species Act and

Oregon Endangered Species Act; listed as endangered under the Colorado Non-

---

will not be subject to interagency review under Executive Order 12,866.  Frazer
Decl. ¶ 19.

[7] For species considered Species of Conservation Concern, the Forest Service
designs its forest plans to guide management in a way that sustains habitat or
conditions to support or restore those populations to the extent possible.  Species of
Conservation Concern: Frequently Asked Questions, U.S. Forest Serv., U.S. Dep't
of Agriculture (June 2016), https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/
fseprd507865.pdf (last visited Feb. 4, 2022).

[8] Forest Service objectives for Sensitive Species include developing and
implementing management practices to ensure that the species does not become
threatened or endangered because of Forest Service actions.  Forest Service
Manual 2670.22, U.S. Forest Serv., U.S. Dep't of Agriculture (Sept. 23, 2005),
https://www.fs.fed.us/im/directives/fsm/2600/2670-2671_clear.doc (last visited
Feb. 4, 2022).

game, Endangered, or Threatened Species Conservation Act; considered a candidate species for listing under Washington endangered species provisions; considered a non-game species with protections in Idaho and Wyoming; protected from collection, importation, and possession, and considered a species of greatest conservation need in Utah; considered a furbearer and species of concern in Montana; and listed as a protected mammal under the Nevada Administrative Code. *Id.*; FWS0016898.

Nor do Plaintiffs' arguments indicate that wolverines in the lower-48 States will face significant risks during the remand period. The main alleged threats to the wolverine raised by Plaintiffs are long-term stressors that would not place wolverines at risk during the 18-month remand. For example, Plaintiffs raise alleged threats posed by climate change and genetic variation over generations of wolverines. *See* ECF No. 37 at 23-24 (discussing studies on effects on wolverines of emissions scenarios through 2055 and 2099); *id.* at 29 (recognizing that, in the context of maintenance of genetic diversity, "short-term" is a few generations). Just one wolverine generation is approximately 7.5 years in length, much longer than the proposed remand time here. FWS0016867. There is also no evidence that the "secondary threats" alleged by Plaintiffs—winter recreation, trapping, and highway and road development—will place wolverines at risk while the remand is ongoing. For instance, trapping or harvesting of wolverines is not allowed in the

20

United States, and recorded mortalities from incidental trapping are low: 3 in Montana since 2012, approximately 6 in Idaho over a 50-year period, and 2 in Wyoming since 1996.  Indeed, there is no evidence of current population decline in wolverines living in the contiguous United States, or that there will be over an 18-month remand period.  Frazer Decl. ¶ 5.

For all these reasons, the consequences of vacatur outweigh the benefits, and Federal Defendants respectfully request that the Court remand the Withdrawal without vacatur.

## III.    If the Court Sets a Deadline for Remand, It Should Be 18 Months After Entry of Judgment.

The Court should deny Plaintiffs' requests for imposition of a deadline on the Service to complete the remand, which the Service will do as expeditiously as possible.  *See Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 189 n.12 (D.C. Cir. 2017) (denying environmental group's request to order EPA to complete ESA consultation by a specific deadline).  Nonetheless, if the Court believes a deadline for completing the remand proceedings is necessary, Federal Defendants respectfully request that the deadline for submitting a new final listing determination to the Federal Register be set for 18 months from entry of Judgment. As explained in the attached Declaration of Gary Frazer, this timeframe accounts for the work required by the Service to complete a thorough and defensible listing determination, as well as agency resource constraints.  Frazer Decl. ¶¶ 8-18.

21

The discretion of the Court in fashioning a remedy is quite broad unless a statute provides otherwise in a "clear and valid legislative command." *See United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496-97 (2001) (citation omitted). Specifically, "'Congress did not limit district courts' authority to provide equitable relief under the ESA, and indeed, specifically reserved their traditional authority to fashion appropriate equitable relief.'" *Colo. River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 178 (D.D.C. 2006) (quoting *Defs. of Wildlife v. Norton*, 239 F. Supp. 2d 9, 25 (D.D.C. 2002), *vacated in part on other grounds*, 89 F. App'x 273 (D.C. Cir. 2004)) (citing 16 U.S.C. § 1540(g)(5)). In setting compliance timeframes for an agency, courts should consider "(1) whether the 'budgetary' and 'manpower demands' required are 'beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs'; and (2) an agency's need to have more time to sufficiently evaluate complex technical issues." *California v. U.S. EPA*, 385 F. Supp. 3d 903, 909 (N.D. Cal. 2019) (quoting *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 712-13 (D.C. Cir. 1974)).

The Declaration of Gary Frazer discusses in detail the steps that the Service plans to take on remand if its motion is granted and the length of time needed for each. First, the Service will need to draft, approve, and submit for publication to the Federal Register a notice of intent to re-evaluate the Withdrawal and request

22

for new information ("Notice").[9]  Frazer Decl. ¶ 10.  The Service also expects to

leave open the comment period for 30 days after the Notice's publication.  *Id.*

While developing the Notice, the Service will also update the existing Species

Status Assessment for the North American Wolverine.[10]  *Id.* ¶ 12.  The current

range of the wolverine and conservation measures presently in place for it will

require the Service to engage in the complex and time-consuming process of

coordinating with Canada as well as multiple States, Tribes, and Service Regions

and programs to update the Assessment's analyses.  *Id.* ¶ 13.  The Service further

plans to incorporate any relevant, new information submitted during the comment

period following the Notice's publication into the Assessment.  *Id.*

The Service will next draft a recommended determination based on the

information in the Assessment and the comments received in response to the

Notice.  *Id.* ¶ 14.  The draft will then undergo Regional Director and Regional

Solicitor review, as well as another review by Service Headquarters and the

Department of the Interior.  *Id.* ¶¶ 15-17.

---

[9] If the Court vacates the Withdrawal, the Service still intends to publish a notice in the Federal Register telling the public that the Proposed Rule has gone back into effect and asking for new information to inform the final listing determination. Frazer Decl. ¶ 11.  The Service anticipates that the remaining procedures described in the Declaration of Gary Frazer would be substantially similar regardless of which notice is published.  *Id.*

[10] The Assessment is an analytical document that makes available the foundational science for a species to use in most ESA-related decisions.  Frazer Decl. ¶ 12.

23

A remand deadline of less than 18 months would result in hardship for the Service.  Frazer Decl. ¶ 9.  The 18-month timeframe outlined above will allow the Service to expeditiously re-evaluate the Withdrawal while ensuring compliance with the requirements of the ESA and Administrative Procedure Act.  *See id.* ¶ 8. In contrast, Plaintiffs' proposed remedy of 12 months would require a rushed decision that might not allow adequate time to gather and analyze the required science and data, and prepare a thorough and defensible determination.  *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 606 (9th Cir. 2014) ("Deadlines become a substantive constraint on what an agency can reasonably do."); *see also WildEarth Guardians v. Haaland*, No. CV 20-1035 (CKK), 2021 WL 4502054, at *7 (D.D.C. Sept. 30, 2021) ("[I]t would be imprudent to set a deadline that the Service cannot feasibly comply with[.]" (quoting *Ctr. for Biological Diversity, Inc. v. Haaland*, No. 20 C 1227, 2021 WL 4169567, at *7 (N.D. Ill. Sept. 14, 2021))).  For example, Plaintiffs' proposed remedy of 12 months makes no accommodation for the time necessary for notice and comment—a process they presumably would want to participate in—and might deny the Service Director and the Department of the Interior sufficient time to undertake their substantive and legal review of the new final listing determination.

Moreover, the remand deadline proposed by Federal Defendants is in line with the ESA's requirements.  While the Service generally must publish either a

final rule implementing a proposed listing rule or notice that the agency is

withdrawing a proposed listing rule within 12 months following the issuance of a

proposed rule, *see* 16 U.S.C. § 1533(b)(6)(A), the ESA also provides a 6-month

extension to the initial 12-month period if "there is substantial disagreement

regarding the sufficiency or accuracy of the available data." *Id.* § 1533(b)(6)(B)(i).

Accordingly, consistent with this statutory extension provision, the Service should

be permitted at least as much time to complete a new listing determination—

including the possibility of a 6-month extension in the event of data concerns—as

contemplated by the ESA.

A shorter remand period would strain the Service's already-limited

resources.  The staff of the Service's Montana Field Office, which would be the

lead on the remand of the Withdrawal, is currently working on several other high-

priority actions to which it has already directed its available resources, such as the

lynx recovery plan, gray wolf status review, Yellowstone bison listing petition,

sturgeon chub and sicklefin chub listing determinations, and grizzly bear delisting

petitions.  Frazer Decl. ¶ 9.  Some of those actions have court-ordered deadlines,

and grizzly and wolf are some of the most highly controversial species for the

Service.  Additionally, the Regional Office that will review the new final listing

determination must also review the Montana Field Office's other actions, plus

several others.  *Id.*  If the Court were to order the 12-month remand deadline

requested by Plaintiffs, these actions would suffer further delay as a result. Considering this heavy workload and the Service's limited resources, the Service's proposed remand schedule is reasonable. *See WildEarth Guardians*, 2021 WL 4502054, at *8 (collecting cases).

Finally, for the reasons discussed in more detail in Section II.B above, an 18-month remand deadline will not impose a significant hardship on Plaintiffs. The Service incorporates those arguments here by reference.

In sum, the Service should be accorded latitude to integrate the additional workload, rather than compressing this additional determination into Plaintiffs' proposed 12-month timeline.  Otherwise, the Service will be forced to shift its well-reasoned priorities, and may produce a finding likely lacking in quality that may have to be revisited.  Accordingly, Federal Defendants respectfully request that, if the Court finds it necessary to set a remand deadline, it be 18 months from entry of Judgment.

## **CONCLUSION**

The Court should grant Federal Defendants' motion in full and remand without vacatur, deny Plaintiffs' motions for summary judgment as moot, and enter judgment directing the Service to submit to the Office of the Federal Register a new final listing determination within 18 months of the Court's entry of judgment.

Dated: February 4, 2022

Respectfully submitted,

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief

*/s/ Kamela A. Caschette*
KAMELA A. CASCHETTE, Trial Attorney
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov

*Attorneys for Federal Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), there are 6,100 words in the brief as counted using the word count feature in Microsoft Word, excluding the caption, signature blocks, and certificates of service and compliance.

/s/   *Kamela A. Caschette*
Kamela A. Caschette
*Attorney for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I, Kamela A. Caschette, hereby certify that, on February 4, 2022, I caused

the foregoing to be served upon counsel of record through the Court's CM/ECF

system.  I declare under penalty of perjury that the foregoing is true and correct.


/s/ Kamela A. Caschette
KAMELA A. CASCHETTE, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov

*Attorney for Federal Defendants*

29