RANDY TANNER, Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
Tel: (406) 329-4268; Fax: (406) 542-1476
E-mail: randy.tanner@usdoj.gov

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief
KAMELA A. CASCHETTE, Trial Attorney
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov
*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br> v. <br><br> DEBRA HAALAND, et al., <br><br> Federal Defendants, | Lead Case No. <br> CV 20-181-M-DWM <br><br> Member Case No. <br> CV 20-183-M-DWM |

STATE OF IDAHO, by and through the
Office of Species Conservation and the
Idaho Fish and Game Commission,

                    Defendant-Intervenor.

**FEDERAL DEFENDANTS'
COMBINED REPLY BRIEF IN
SUPPORT OF MOTION FOR
REMAND WITHOUT VACATUR**

WILDEARTH GUARDIANS, et al.,

                    Plaintiffs,

          v.

DEBRA HAALAND, et al.,

                    Federal Defendants,

STATE OF IDAHO, by and through the
Office of Species Conservation and the
Idaho Fish and Game Commission,

                    Defendant-Intervenor.

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................1

  I.  The Service Has Requested Voluntary Remand of the Withdrawal on
Appropriate Grounds. ...................................................................1

  II.  The Court Should Remand the 2020 Withdrawal Without Vacatur. ..............4

    A. There Is a Serious Possibility that the Service Can Substantiate Its Decision
on Remand. ...............................................................................4

    B. The Balance of the Harms Considered with the Absence of Agency Error
Weighs in Favor of Remanding Without Vacatur. ...........................................12

CONCLUSION ....................................................................................18

# TABLE OF AUTHORITIES

**CASE**                                                                                          **PAGE**

*All. for Wild Rockies v. Marten*,
　No. CV 17-21-M-DLC, 2018 WL 2943251 (D. Mont. June 12, 2018) ......... 6, 13

*Am. Forest Res. Council v. Ashe*,
　946 F. Supp. 2d 1 (D.D.C. 2013) ............................................................ 5, 12, 18

*Amalgamated Clothing Workers of Am., AFL-CIO v. NLRB*,
　371 F.2d 740 (D.C. Cir. 1966) ........................................................................ 8, 18

*Ariz. Cattle Growers' Ass'n v. Salazar*,
　606 F.3d 1160 (9th Cir. 2010) ...................................................................9

*Cal. Cmtys. Against Toxics v. U.S. EPA*,
　688 F.3d 989 (9th Cir. 2012) ............................................................2, 5

*Carpenters Indus. Council v. Salazar*,
　734 F. Supp. 2d 126 (D.D.C. 2010)...............................................................5

*Center for Biological Diversity v. Haaland*,
　998 F.3d 1061 (9th Cir. 2021) ................................................... 1, 3, 9

*Chamber of Com. v. Dep't of Energy*,
　627 F.2d 289 (D.C. Cir. 1980) ...................................................................7

*Ctr. for Biological Diversity v. Bernhardt*,
　No. 3:18-cv-00064-SLG, 2019 WL 4725124 (D. Alaska Sept. 26, 2019)............3

*Ctr. for Env't Health v. Vilsack*,
　No. 18-cv-01763-RS, 2022 WL 658965 (N.D. Cal. Mar. 4, 2022)............ passim

*Ctr. For Native Ecosystems v. Salazar*,
　795 F. Supp. 2d 1236 (D. Colo. 2011)...............................................................7

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
　140 S. Ct. 1891 (2020) .................................................................. 10, 11

*Ecology Ctr. v. Castaneda*,
    574 F.3d 652 (9th Cir. 2009) ..............................................................11

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...........................................................................3

*Hunt v. Imperial Merchant Servs., Inc.*,
    560 F.3d 1137 (9th Cir. 2009) ............................................................7

*In re Clean Water Act Rulemaking*,
    Nos. C 20-04636 WHA, C 20-04869 WHA, C 20-06137 WHA, 2021 WL
    4924844 (N.D. Cal. Oct. 21, 2021)................................................ 5, 13

*Karsch v. Chertoff*,
    No. C07-0957RSL, 2007 WL 3228104 (W.D. Wash. Oct. 29, 2007)..................8

*Keltner v. United States*,
    148 Fed. Cl. 552 (2020) ....................................................................10

*Kern Cnty. Farm Bureau v. Allen*,
    450 F.3d 1072 (9th Cir. 2006) ..........................................................11

*Louisiana v. Am. Rivers*,
    __S.Ct.__, No. 21A539, 2022 WL 1019417 (Apr. 6, 2022) .................5

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989).........................................................................12

*N. Coast Rivers All. v. U.S. Dep't of the Interior*,
    No. 1:16-cv-00307-LJO-MJS, 2016 WL 8673038 (E.D. Cal. Dec. 16, 2016). 3, 6

*Nat. Res. Def. Council, Inc. v.U.S. Dep't of the Interior*,
    275 F. Supp. 2d 1136 (C.D. Cal. 2002) ..............................................12

*Navajo Nation v. Regan*,
    No. 20-CV-602-MV/GJF, 2021 WL 4430466 (D.N.M. Sept. 27, 2021) ............13

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*,
    Nos. 1:20-cv-00431-DAD-EPG, 1:20-cv-00426-DAD-EPG, 2022 WL 789122
    (E.D. Cal. Mar. 11, 2022) ................................................... 6, 7, 8, 17

*Pascua Yaqui Tribe v. U.S. EPA*,
        No. CV-20-00266-TUC-RM, 2021 WL 3855977 (D. Ariz. Aug. 30, 2021) ......13

*Pollinator Stewardship Council v. U.S. EPA*,
        806 F.3d 520 (9th Cir. 2015) ....................................................................... 7, 9, 14

*Rural Empowerment Ass'n for Cmty. Help v. U.S. EPA*,
        No. CV 18-2260 (TJK), 2022 WL 444095 (D.D.C. Feb. 14, 2022).....................8

*SKF USA, Inc. v. United States*,
        254 F.3d 1022 (Fed. Cir. 2001)...........................................................................2

*Vanda Pharms., Inc. v. Food & Drug Admin.*,
        No. CV 19-301 (JDB), 2019 WL 1198703 (D.D.C. Mar. 14, 2019)............. 6, 12

## Statutes

16 U.S.C. § 1533(b)(3)(B)(iii) .................................................................................14

16 U.S.C. § 1533(b)(5).............................................................................................14

16 U.S.C. § 1533(b)(6)(B)(iii) .................................................................................10

16 U.S.C. § 1536(a)(4).............................................................................................15

16 U.S.C. § 1536(b)(4).............................................................................................16

## Regulations

50 C.F.R. § 402.10(c)...............................................................................................15

50 C.F.R. § 402.10(d) ..............................................................................................16

50 C.F.R. § 402.14(i) ...............................................................................................16

iv

**INTRODUCTION**

The Court should grant Federal Defendants' Motion for Voluntary Remand Without Vacatur in full.  No party opposes the U.S. Fish and Wildlife Service's (the "Service") request for a voluntary remand of the 2020 withdrawal of the proposed rule to list the North American wolverine in the contiguous United States as threatened under the Endangered Species Act ("Withdrawal"), or Federal Defendants' commitment to an 18-month remand timeline.  The main issue the parties contest is whether the Court should vacate the Withdrawal while the Service's remand is ongoing.  The Service has demonstrated that its reasons for remand, while substantial and legitimate, are not "serious errors."  Because of the lack of serious error or harm to Plaintiffs during the short remand period, the disruptive consequences that would result from vacating the Withdrawal weigh in favor of leaving the decision in place during the remand.

**ARGUMENT**

**I.      The Service Has Requested Voluntary Remand of the Withdrawal on Appropriate Grounds.**

Federal Defendants request voluntary remand of the Withdrawal for two legitimate reasons: (1) to re-examine the decision in light of the intervening decision in *Center for Biological Diversity v. Haaland*, 998 F.3d 1061 (9th Cir. 2021) ("Pacific Walrus Decision"), and (2) to re-evaluate the decision in light of new available scientific information.  Both of these reasons fall within the

1

recognized circumstances for requesting voluntary remand. *See SKF USA, Inc. v. United States,* 254 F.3d 1022, 1028 (Fed. Cir. 2001) (recognizing that an agency can request voluntary remand "to reconsider its decision because of intervening events outside of the agency's control," or, "even in the absence of intervening events . . . without confessing error"); *see also Cal. Cmtys. Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam) (citing *SKF USA*, 254 F.3d at 1029).

While Plaintiffs do not explicitly argue that remand is improper, they implicitly do so by contending that the intervening Pacific Walrus Decision "does not trigger the need for a remand" in their vacatur argument. *See* ECF No. 46 at 22.[1]  Plaintiffs' contention does not provide a basis for denying remand because it does not show the Service's request is frivolous or made in bad faith. *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 ("Generally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith."). Before the Pacific Walrus Decision, the Service would have taken the same position in this case that it successfully took before the district court in that case— that the explanation it provided in the Withdrawal and its supporting record regarding the Service's foreseeable future discussion is sufficient to meet the standard articulated in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).

---

[1] This brief references the ECF-generated page numbers for court filings.

*See Ctr. for Biological Diversity v. Bernhardt*, No. 3:18-cv-00064-SLG, 2019 WL 4725124, at \*5, \*11 (D. Alaska Sept. 26, 2019) ("[The Service] adequately explained its decision to use the year 2060 as the timeframe for its foreseeable future analysis."), *rev'd and remanded sub nom. Ctr. for Biological Diversity v. Haaland*, 998 F.3d 1061 (9th Cir. 2021).  The Pacific Walrus Decision reversed the district court's finding and clarified the specificity required by the Ninth Circuit to meet the *Fox* standard.  *See Ctr. for Biological Diversity*, 998 F.3d at 1070. Because at least one court found that the Service's approach to foreseeable future discussions was consistent with that standard before the Withdrawal's publication, the Service's concerns regarding the implications of the intervening Pacific Walrus Decision for the 2020 Withdrawal are substantial and legitimate.  *See N. Coast Rivers All. v. U.S. Dep't of the Interior*, No. 1:16-cv-00307-LJO-MJS, 2016 WL 8673038, at \*3–4 (E.D. Cal. Dec. 16, 2016) (concluding that voluntary remand was justified based on the "intervening change in law" scenario because "at the time the [agency action] issued, at least one Court . . . found the government's actions to be <u>consistent</u> with [the governing law]" (emphasis in original)).

Accordingly, the Service requests remand based on substantial and legitimate concerns, and the Court should order remand on those bases.

II.     **The Court Should Remand the 2020 Withdrawal Without Vacatur.**

The Service has shown that the *Allied-Signal* factors weigh in favor of remand without vacatur.  First, there is a serious possibility that the Service can address the concerns motivating its remand request and issue another withdrawal of the Proposed Rule.  Second, because the Service does not concede that it committed any error, let alone serious error, the disruptive consequences that would result from vacating the Withdrawal weigh in favor of leaving the decision in place during the course of the remand.

**A.     There Is a Serious Possibility that the Service Can Substantiate Its Decision on Remand.**

The Service has demonstrated there is a serious possibility that it could issue another withdrawal of the Proposed Rule after completing the remand.  Plaintiffs, apparently recognizing this fact, attempt to litigate the merits of their claims in an effort to show that the Service committed serious errors in the Withdrawal.[2]  The

---

[2] The Service has not forfeited its ability to oppose Plaintiffs' motions for summary judgment or dispute the statement of material facts submitted therewith.  *See* ECF No. 46 at 18.  Instead, the instant Motion, if granted, would moot the pending motions for summary judgment.  *See, e.g.*, *Ctr. for Env't Health v. Vilsack*, No. 18-cv-01763-RS, 2022 WL 658965, at *5 (N.D. Cal. Mar. 4, 2022) ("[T]he [agency]'s motion to remand without vacatur is granted.  The motions for summary judgment are denied as moot.").

Court should not be swayed by Plaintiffs' improper attempts to litigate the merits in response to this Motion, and should find remand without vacatur appropriate.

As Plaintiffs recognize, the Court need not reach the merits to rule on a motion for voluntary remand.  *See* ECF No. 46 at 18–19; ECF No. 47 at 11; *see also Cal. Cmtys. Against Toxics*, 688 F.3d at 992.[3]  Voluntary remand allows for a more efficient use of judicial and agency resources by letting the agency first address substantial and legitimate issues through a new agency action "rather than force inexpert courts to waste resources assessing the problems."  *Ctr. for Env't Health*, 2022 WL 658965, at \*5 (granting motion for voluntary remand without vacatur).  This is true even if a merits ruling could lead to remand with vacatur. *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 45–46 (D.D.C. 2013) (holding that voluntary remand without vacatur was appropriate where reaching the merits might "lead to vacatur" because "the Court is not in a position to fully assess the seriousness of the deficiencies or to predict whether or how the new

---

[3] Some courts have held that they do not have authority to vacate without first reaching a decision on the merits about an agency action.  *See, e.g.*, *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135–36 (D.D.C. 2010).  Courts within this Circuit have found that they do have such authority.  *See In re Clean Water Act Rulemaking*, Nos. C 20-04636 WHA, C 20-04869 WHA, C 20-06137 WHA, 2021 WL 4924844, at \*4 (N.D. Cal. Oct. 21, 2021) (collecting cases regarding pre-merits vacatur). However, the Supreme Court recently issued a stay of the *In re Clean Water Act Rulemaking* court order, which granted pre-merits vacatur of an agency regulation. *Louisiana v. Am. Rivers*, __S.Ct.__, No. 21A539, 2022 WL 1019417 (Apr. 6, 2022).

designation will differ from the current designation," and noting "[i]t will be for the agency in the first instance" to make the determination), *judgment entered*, 301 F.R.D. 14 (D.D.C. 2014), *and aff'd*, 601 F. App'x 1 (D.C. Cir. 2015); *see also Ctr. for Env't Health*, 2022 WL 658965, at *5 (granting remand without vacatur even though "[i]t seems likely at least one of Plaintiffs' arbitrary-and-capricious arguments would succeed if this case proceeded to judgment").

In light of the above, the Court should evaluate the seriousness of only the issues raised by the Service in support of its motion for voluntary remand when determining whether vacatur is appropriate here.  When applying the *Allied-Signal* test to motions for voluntary remand, Courts generally limit their evaluation of the "seriousness of the error" prong to the reasons for remand given by the agency. *See, e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'ns v. Raimondo*, Nos. 1:20-cv-00431-DAD-EPG, 1:20-cv-00426-DAD-EPG, 2022 WL 789122, at *15, *69 (E.D. Cal. Mar. 11, 2022) (granting motion for voluntary remand without vacatur after evaluating reasons agency gave for remand); *All. for Wild Rockies v. Marten*, No. CV 17-21-M-DLC, 2018 WL 2943251, at *3 (D. Mont. June 12, 2018) (evaluating vacatur based on reasons agency gave for remand); *N. Coast Rivers All.*, 2016 WL 8673038, at *5, *8–9 (same); *see also Vanda Pharms., Inc. v. Food & Drug Admin.*, No. CV 19-301 (JDB), 2019 WL 1198703, at *2 (D.D.C. Mar. 14, 2019) (granting motion for voluntary remand without vacatur where the agency's motion

did "not concede that the clinical hold order is invalid, only that the agency intends to reevaluate its decision"); *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1238, 1242 (D. Colo. 2011) (evaluating vacatur based on reasons agency gave for remand).  This makes good sense.  Otherwise, the Court would necessarily need to conduct some sort of analysis of the merits to determine if any errors alleged by Plaintiffs in their lawsuit are serious enough to require vacatur, which would defeat the purpose of voluntary remand.[4]  *See Ctr. for Env't Health*, 2022 WL 658965, at *5.

Limiting the Court's vacatur analysis to the reasons raised by the agency for remand does not mean that Plaintiffs' remaining allegations will go unanswered. Instead, the expert agency would first have the opportunity to examine and address Plaintiffs' other concerns in a new final listing determination.  *See, e.g.*, *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (discussing that "considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant" (quoting *Chamber of Com. v. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980))); *Pac. Coast Fed'n*, 2022 WL 789122, at *15 (granting voluntary

---

[4] Similarly, Ninth Circuit courts evaluate whether vacatur is appropriate after a merits determination based only on the issues they adjudicate; they do not assess the seriousness of the plaintiff's remaining claims.  *See Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532–33 (9th Cir. 2015) (adjudicating appropriateness of vacatur based on the one claim it reached).

remand without vacatur where agencies represented the new action "will address some, if not all, of the concerns plaintiffs have raised"). And as the designated agency responsible for Endangered Species Act ("ESA") listing determinations for terrestrial species such as the wolverine, the Service is in the best position to evaluate Plaintiffs' concerns. *See, e.g.*, *Karsch v. Chertoff*, No. C07-0957RSL, 2007 WL 3228104, at *2 (W.D. Wash. Oct. 29, 2007) (granting motion to remand because "the agency is in the best position to render a decision on plaintiff's application"); *see also Amalgamated Clothing Workers of Am., AFL-CIO v. NLRB*, 371 F.2d 740, 746 (D.C. Cir. 1966) ("The [agency]'s power to fashion remedies places a premium upon agency expertise and experience, and the broad discretion involved is for the agenc[y] and not the court to exercise.").[5]

The reasons the agency has given in support of remand—re-evaluating the Withdrawal in light of the intervening Pacific Walrus Decision and recent scientific studies—support remanding without vacatur. The Service does not need to confess error for the Court to grant voluntary remand without vacatur. *See Pac. Coast Fed'n*, 2022 WL 789122, at *10–16; *Rural Empowerment Ass'n for Cmty. Help v. U.S. EPA*, No. CV 18-2260 (TJK), 2022 WL 444095, at *2 (D.D.C. Feb.

---

[5] Even if the Court considers the other issues raised by Plaintiffs in their merits briefing, they should, at most, carry less weight in the Court's analysis. *See Ctr. for Env't Health*, 2022 WL 658965, at *5 (concluding that perceived deficiencies in an action that the agency has requested remand on "should carry less weight" pre-judgment).

14, 2022) (granting voluntary remand without vacatur where "Defendants have not

confessed error or admitted that the rule is improper").  Instead, the Service must

show that it could reach the same outcome on remand.  *Pollinator Stewardship*

*Council*, 806 F.3d at 532.  The Service has done so here.  Just like in the Pacific

Walrus Decision, "[t]he Service may be able to issue a decision sufficiently

explaining the reasons for its change in position" on what constitutes the

foreseeable future for the wolverine.  *Ctr. for Biological Diversity*, 998 F.3d at

1070.  And because agencies are entitled to great deference regarding what

constitutes the best available science, the Service could lawfully find that

withdrawal of the proposed rule is appropriate as long as it rationally explains how

the new studies impact or do not impact its determination.  *See Ariz. Cattle*

*Growers' Ass'n v. Salazar*, 606 F.3d 1160, 1163 (9th Cir. 2010).

      The Service's commitment to issuing a new final listing determination is not

an attempt to offer a *post hoc* rationalization for the Withdrawal.  *See* ECF No. 46

at 20–21, 24–25; ECF No. 47 at 14–16.  Just because the Service *could* provide

further explanation and reach the same outcome after the remand does not mean it

*will*.  And here, the Service has committed to issuing an entirely new determination

within 18 months of the Court's order on this Motion based on a new record.  ECF

No. 44-1 ¶ 8.  The cases Plaintiffs rely on all involve an agency offering a further

explanation to defend the decision at issue in the litigation, or lack of intent to

actually reconsider the underlying determination. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908 (2020) ("Secretary Nielsen chose to elaborate on the reasons for the initial rescission rather than take new administrative action[.]"); *Keltner v. United States*, 148 Fed. Cl. 552, 565 (2020) ("A court would be hard-pressed to find an agency's justification 'substantial and legitimate' where, as here, an agency does not profess any intention to reconsider the underlying administrative decision and, instead, explicitly represents that it has all but already prejudged the merits of the plaintiff's claim."); Order at 2, *Rock Creek All. v. U.S. Fish & Wildlife Serv.*, CV 01-152-M-DWM (D. Mont. Mar. 19, 2002), ECF No. 24 (noting that the agency requested a stay of the litigation to allow for further analysis on the biological opinion at issue).  In contrast, here the Service has retained its discretion to make any of the findings in 16 U.S.C. § 1533(b)(6)(B)(iii) in a new final listing determination, and not opined on what its new analyses might conclude.  ECF No. 44-1 ¶ 8.  Additionally, the Service anticipates that the new final determination will take 18 months regardless of whether the Court vacates the Withdrawal, demonstrating the Service's commitment to taking a fulsome look at all of the data when issuing a new determination on the wolverine.[6]  *Id.* ¶¶ 9–11

---

[6] Plaintiffs point to the length of time that the Service requests for remand in an attempt to show that the Service cannot justify the Withdrawal with further

The Service's intent to re-examine the Withdrawal in light of scientific information such as the Mowat (2019) and Sawaya (2019) studies is not a confession of error.  Plaintiffs' arguments assume that these studies constitute the best available science.  *See* ECF No. 47 at 12–14; *see also Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1080 (9th Cir. 2006) (discussing that the best available science standard "merely prohibits [an agency] from disregarding available scientific evidence that is in some way better than the evidence [it] relies on" (alteration in original) (citation omitted)).  However, the Service does not concede that these studies are the best available scientific information, although it has the discretion to make such a finding on remand.[7]  *See Ecology Ctr. v. Castaneda*, 574 F.3d 652, 658–59 (9th Cir. 2009) ("We grant considerable discretion to agencies on matters 'requir[ing] a high level of technical expertise.'"

---

explanation.  *See* ECF No. 46 at 21.  The Court should give short shrift to this argument.  The Service has properly exercised its discretion to commit to taking a new, fulsome look at the science and data surrounding the wolverine and issuing a new determination on remand, even though it is not required to.  *See Regents of the Univ. of Cal.*, 140 S. Ct. at 1908 ("The District Court's remand thus presented [the agency] with a choice: rest on the [challenged decision] while elaborating on its prior reasoning, or issue a new rescission bolstered by new reasons absent from the [challenged decision].").

[7] While the Service acknowledges that these studies were included in the administrative record for the Withdrawal, the Service would like the opportunity to more fully examine them in light of the issues raised by Plaintiffs in their summary judgment briefs, as well as any other relevant new information raised during the public comment period, and determine how to best weigh them.  *See* ECF No. 44-1 ¶ 4.

(alteration in original) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989))).  Accordingly, the Court should not vacate on this basis.  *See, e.g.*, *Vanda Pharms.*, 2019 WL 1198703, at *2 (granting motion for voluntary remand without vacatur where the agency did not concede that the decision was invalid, but only that it intended to re-evaluate it).

Even if substantial changes to the Withdrawal result from the Service's analysis of these studies, the Pacific Walrus Decision, or any of the other issues raised by Plaintiffs, that prospect does not necessitate vacatur.  *See, e.g.*, *Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*, 275 F. Supp. 2d 1136, 1145 (C.D. Cal. 2002) (granting motion for voluntary remand but not vacating agency decision where court found the agency would revise the analysis of economic impacts and could revise the designation of critical habitat for a listed species); *Am. Forest Res. Council*, 946 F. Supp. 2d at 47 (granting motion for voluntary remand without vacatur because that "will allow the agency to *revise* the designation based on its reconsidered construction of the ESA" (emphasis added)).

For all these reasons, the first *Allied-Signal* factor weighs in favor of leaving the Withdrawal in place during the course of the remand.

### B. The Balance of the Harms Considered with the Absence of Agency Error Weighs in Favor of Remanding Without Vacatur.

The balance of the harms here does not support vacatur, especially when viewed in light of the first *Allied-Signal* factor discussed above.  The Service has

12

shown that vacating the Withdrawal will have disruptive consequences.

Additionally, Plaintiffs have failed to demonstrate that leaving the Withdrawal in

place will harm their interest in the wolverine during the course of the Service's

remand.  Given the disruptive consequences to the Service and other stakeholders,

the lack of harm to Plaintiffs, and the absence of agency error under the first

*Allied-Signal* prong, the Court should remand without vacatur.

      As a preliminary matter, the consequences of vacatur need not meet the level

of severity suggested by Plaintiffs for the Court to remand without vacatur here.

The cases relied on by Plaintiffs, unlike the instant matter, all involve findings of

serious error under the first *Allied-Signal* prong.  *See In re Clean Water Act*

*Rulemaking*, 2021 WL 4924844, at *8 ("EPA itself has signaled it could not or will

not adopt the same rule upon remand[.]"); *Navajo Nation v. Regan*, No. 20-CV-

602-MV/GJF, 2021 WL 4430466, at *3 (D.N.M. Sept. 27, 2021) ("Accordingly,

this is not a case in which the agency could adopt the same rule on remand by

offering 'better reasoning or . . . complying with procedural rules.' " (alteration in

original) (citation omitted)); *Pascua Yaqui Tribe v. U.S. EPA*, No. CV-20-00266-

TUC-RM, 2021 WL 3855977, at *5 (D. Ariz. Aug. 30, 2021) (concluding the

agency's concerns "involve fundamental, substantive flaws that cannot be cured

without revising or replacing the [agency]'s definition of 'waters of the United

States'"); *All. for Wild Rockies*, 2018 WL 2943251, at *3 ("[T]he error being

13

addressed—the effects of the fire on the project—is significant and will likely result in changing the ROD in this case."); *see also Pollinator Stewardship Council*, 806 F.3d at 532–33 (vacating after reaching the merits).  In other words, because the courts in those cases found the error at issue was serious and the agency was unlikely to arrive at the same decision on remand, the impacts of vacatur had to be severe to justify leaving the agency action in place.  Here, the Service has not committed serious error and, as discussed above, could again issue a withdrawal of the Proposed Rule.

And vacating the Withdrawal *will* have disruptive consequences.  Vacatur would reanimate the 2013 Proposed Rule, and with it the ESA section 7 conferencing requirement for proposed species.[8]  Reanimating the informal conferencing requirement would divert agency and stakeholder resources from addressing other ESA obligations to determining which consultations, actions, or biological assessments may need to be revisited to include the informal conferencing process for the wolverine.  ECF No. 44-1 ¶ 7.  This "seesawing" and resultant diversion of resources from the agencies' other ESA obligations would

---

[8] To be clear, if the Withdrawal were vacated, wolverines would be considered a *proposed* species, not a *candidate* species as Plaintiffs occasionally represent. "Proposed species" are species the Service has issued a proposed ESA listing rule for, *see* 16 U.S.C. § 1533(b)(5), whereas "candidate species" are species for which the Service has found listing under the ESA is warranted but precluded by other higher-priority actions in a 12-month determination, *id.* § 1533(b)(3)(B)(iii).

14

make it more difficult to carry out their mission under the ESA.  *Ctr. for Env't Health*, 2022 WL 658965, at *5 ("Seesawing back and forth between different rules undermines [the statute's] purpose, not furthers it.").  And 18 months after the Court's order, when the remand is complete, the Service could issue a withdrawal again.  Vacatur now would force the agencies "to scramble into compliance with a temporary [proposed] rule, and the [Service] would likely have to waste administrative resources to mitigate the chaos—precisely the harm *Allied-Signal* cautions courts to avoid."  *Id.*

Plaintiffs incorrectly contend that leaving the Withdrawal in place would result in the loss of long-term protections for the wolverine.  The Service recognizes that conferencing provides some procedural protections for proposed species.  However, as Plaintiffs note, conferencing is an informal process that, at most, results only in advisory recommendations by the Service.  50 C.F.R. § 402.10(c); *see* ECF No. 47 at 18–19.  Additionally, conferencing is only required if the agency action is likely to jeopardize the species.  16 U.S.C. § 1536(a)(4); 50 C.F.R. § 402.10(c).  The Service has concluded that land management activities by action agencies conducted within the wolverine's range are generally not threats to the wolverine, and are accordingly unlikely to meet the high "jeopardy" standard

required for conferencing.[9]  ECF No. 44-1 ¶ 7.  Even if conferencing is done, any

incidental take statement provided as a result of that process has no effect unless

the species is eventually listed and the Service subsequently adopts it.[10]  50 C.F.R.

§ 402.10(d)–(e).  In other words, there is little likelihood that conferencing will

yield substantive protections for the wolverine during the course of the remand.

And if the wolverine in the lower-48 States is ultimately listed under the ESA on

the remand's completion, then it would receive the full swath of long-term

protections that it would be entitled to under federal law, including ESA

section 7(a)(2) consultations on appropriate federal actions, which may include

forest plans.

Plaintiffs have also not shown that their interest in wolverines in the

contiguous United States will be otherwise harmed over the 18 months of the

Service's remand if the Withdrawal remains in place.  Importantly, Plaintiffs fail to

---

[9] Further, the Service does not expect wolverine abundance to be significantly
impacted by any potential stressors during the remand.  ECF No. 44-1 ¶ 5.

[10] An incidental take statement is a document issued by the Service at the
completion of the formal consultation process if it concludes that the proposed
action avoids jeopardy and adverse modification, and that incidental taking of
listed species will not violate Section 7(a)(2) of the ESA.  16 U.S.C. § 1536(b)(4).
The incidental take statement specifies the impact of the incidental taking on the
listed species, establishes reasonable and prudent measures that are necessary or
appropriate to minimize the amount or extent of incidental take, and states the
terms and conditions that the action agency must comply with.  *Id.*
§ 1536(b)(4)(C)(i)–(iv); 50 C.F.R. § 402.14(i).

16

rebut that there is no evidence of current population decline for wolverines living in the contiguous United States, or that there will be over an 18-month remand period. *See* ECF No. 44-1 ¶ 5. Plaintiffs' argument that Montana is "likely" to allow trapping of wolverines during the remand is purely speculative. *See* ECF No. 46 at 37. They provide no indication that Montana has considered allowing wolverine trapping since the Withdrawal's issuance or that it intends to do so in the future. Additionally, the winter recreational activities Plaintiffs raise are considered a low stressor to wolverines at the individual and population level. FWS0016890. And even if genetic isolation is a threat to the wolverine as Plaintiffs contend—which the Service does not concede—it is a long-term stressor that will not place wolverines at risk during the 18-month remand. *See* ECF No. 44 at 28–29.

Moreover, Plaintiffs' arguments that they will be prejudiced by voluntary remand without vacatur and without consideration of the merits fail. If Plaintiffs were correct that this is prejudicial, motions for voluntary remand without vacatur could never be granted, even though courts have authority both to remand agency decisions without consideration of the merits and to remand without vacatur in such cases. *See Pac. Coast Fed'n*, 2022 WL 789122, at *12 (noting that if plaintiff's argument that voluntary remand without vacatur "unfairly prevented" it from challenging the merits of an agency decision, "then opposed motions for

17

voluntary remand without vacatur would almost never be granted" (quoting *Am. Forest Res. Council*, 946 F. Supp. 2d at 44)).  Similarly, that Plaintiffs have filed their opening briefs is not prejudicial.  As previously discussed, the Service is the expert agency and in the best position to first evaluate Plaintiffs' concerns.  *See Amalgamated Clothing Workers*, 371 F.2d at 746.  Voluntary remand without vacatur is fully consistent with the court's equitable powers and not foreclosed at the gate due to inherent prejudice to Plaintiffs.

In sum, the disruption that federal agencies and stakeholders would experience if the Withdrawal were vacated and the lack of serious agency error here weigh in favor of remand without vacatur.  The minimal prejudices claimed by Plaintiffs do not outweigh these factors.

## <u>CONCLUSION</u>

The Court should grant Federal Defendants' motion in full and deny Plaintiffs' motions for summary judgment as moot.


Dated: April 8, 2022

Respectfully submitted,

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division
SETH M. BARSKY, Chief
MEREDITH L. FLAX, Assistant Chief

18

/s/ Kamela A. Caschette
KAMELA A. CASCHETTE, Trial Attorney
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov

*Attorneys for Federal Defendants*

19

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's April 1, 2022 Order, ECF No. 49, there are 4,490 words in the brief as counted using the word count feature in Microsoft Word, excluding the caption, signature blocks, and certificates of service and compliance.

*/s/   Kamela A. Caschette*
Kamela A. Caschette
*Attorney for Federal Defendants*

## **CERTIFICATE OF SERVICE**

I, Kamela A. Caschette, hereby certify that, on April 8, 2022, I caused the

foregoing to be served upon counsel of record through the Court's CM/ECF

system.  I declare under penalty of perjury that the foregoing is true and correct.


*/s/ Kamela A. Caschette*
KAMELA A. CASCHETTE, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Tel | (202) 305-0340; Fax | (202) 305-0275
Kamela.Caschette@usdoj.gov

*Attorney for Federal Defendants*

21